675 So.2d 741 (1996)
John G. and Eileen ESCOTO, Norman and Joann Richtik, Rene J.C. Tricou, Jr., and Bon Aire Estates, Inc.
v.
U.S. LENDING CORPORATION, Robert E. Spielman, and Kenneth W. Germain.
No. 95-CA-2692.
Court of Appeal of Louisiana, Fourth Circuit.
May 22, 1996.
*742 Roy C. Cheatwood, Nancy S. Degan, Kent A. Lambert, Phelps Dunbar, L.L.P., New Orlenas, for appellees.
James E. Stovall, Covington, for appellants.
Before LOBRANO, LANDRIEU and MURRAY, JJ.
LOBRANO, Judge.
This appeal arises from a judgment maintaining defendant Robert Spielman's declinatory exception of lack of personal jurisdiction. The issue for our consideration involves two inquiries. Did defendant have sufficient contact with Louisiana to satisfy the due process requirements for personal jurisdiction, and if so, are those contacts subject to the "fiduciary shield" doctrine? We reverse and remand.
In 1994, plaintiffs, two California domiciliaries and four Louisiana domiciliaries, invested in debentures issued by U.S. Lending Corporation (USLC), a Florida corporation. According to plaintiffs' allegations, USLC and its officers, Robert Spielman and Kenneth Germain, solicited sales of these debentures in Louisiana through registered broker-dealers, including Sunpoint Securities in New Orleans through whom plaintiffs allegedly purchased the debentures. After receiving notice from USLC regarding significant financial losses and alleged irregularities in the handling of funds by corporate officer Germain, plaintiffs filed the instant suit against USLC, Spielman and Germain for rescission of the sales and for other unspecified damages. The gravaman of plaintiffs' suit against Spielman is that he was directly involved in the marketing of the debentures in Louisiana and that the private placement memorandum used in the sales solicitations contained misrepresentations and material omissions that misled plaintiffs.
Defendant Spielman, a Florida domiciliary, filed a declinatory exception of lack of personal jurisdiction which the trial court maintained without reasons. Plaintiffs perfect this appeal.
At the trial level and before this Court Spielman argues that he had no contacts with Louisiana sufficient to confer personal jurisdiction, and further, that any contacts he did have with regard to the debenture transactions were strictly in his capacity as an officer of USLC and not in an individual capacity. He cites numerous cases to support his position.
In his affidavit, Spielman states that he has lived in Florida for the past twenty-one years and has never lived in Louisiana. He maintains a Florida driver's license, votes in Florida and pays taxes in Florida. He has never held a Louisiana driver's license, has never been registered to vote in Louisiana and has never paid state or municipal taxes in Louisiana. He attests that he has never leased, rented or owned real property in Louisiana. He has no personal agents in Louisiana and has never appointed an agent for service of process in Louisiana. He has never had a bank account, telephone listing, facsimile listing or post office box in Louisiana. Other than this lawsuit, Spielman has never been a party to any lawsuit in Louisiana. Spielman declared that he has never conducted any personal business in Louisiana and has not personally had any dealings in Louisiana with any of the plaintiffs in this lawsuit.
In opposition, plaintiffs argue that Spielman is jointly liable with USLC under the Louisiana Blue Sky Law, LSA-R.S. 51:701 et seq.[1] and that Spielman's involvement in the *743 investment transactions in question constitutes sufficient minimum contacts for personal jurisdiction. Plaintiffs rely on Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985) in support of their position.
To counter plaintiffs' Blue Sky Law argument, Spielman points out that absent constitutionally mandated minimum contacts, state legislation potentially exposing him to personal liability cannot confer personal jurisdiction. Spielman also distinguishes the holding of Fryar on a factual basis.

DISCUSSION:
The Louisiana Long Arm statute, LSA-R.S. 13:3201 et seq. provides, in part:
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Section B was added in 1987 to ensure that jurisdiction under the Louisiana Long Arm statute extended to the limits allowed by due process. Official Comments, Acts 1987, No. 428.
In Fox v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 576 So.2d 978, 983 (La. 1991), our Supreme Court summarized the law regarding in personam jurisdiction over a nonresident as follows:
"Since the 1987 amendment to LSA-R.S. 13:3201, the sole inquiry in Louisiana into jurisdiction over a nonresident is whether the assertion of jurisdiction complies with constitutional due process. (citation omitted) The limits of the Louisiana long arm statute and the limits of constitutional due process are coextensive and therefore, if the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long arm statute."
In interpreting the due process clause for jurisdictional purposes, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction general and specific. Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A state exercises specific jurisdiction over a nonresident defendant when the suit arises out of or is related to the defendant's contacts with the forum. Burger King Corporation, supra; Cohen v. Cohen, 94-0381 (La.App. 4th Cir. 4/14/94), 635 So.2d 1293. Because the instant suit arises as a result of Spielman's alleged contacts with this state in the sale of USLC's debentures, specific jurisdiction is asserted.
Irrespective of whether specific or general jurisdiction is sought, our inquiry still must focus on a two part minimum contacts/fairness test. deReyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La. 1991). In Boatwright v. Metropolitan Life Ins. Co., 95-1822, 95-1823, 95-1913, p. 4-5, (La.App. 4th Cir. 9/28/95), 661 So.2d 169, 171-172, we explained the minimum contacts/fairness test as follows:
Due process requires that in order to subject a nonresident defendant to personal jurisdiction, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); deReyes v. Marine Mgt. and Consulting, [sic] 586 So.2d 103 (La.1991).
The minimum contacts between the nonresident defendant and the state must be based on some act by the defendant through which he purposefully avails himself of the privilege of conducting activities within the state and thereby invokes the benefits and protections of the state's law. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This requirement ensures that the defendant will not be haled into a jurisdiction *744 solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. deReyes, 586 So.2d at 106. If the defendant deliberately engages in significant activities within a state or creates continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there; because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum. Id. The burden of proving minimum contacts lies with the party claiming jurisdiction to be proper. Once minimum contacts are established, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice". Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184.
Minimum requirements inherent in the concept of fair play and substantial justice may defeat the inference of reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. Id. The relationship between the nonresident and the state must be such that it would be reasonable to require the nonresident to defend the suit in that state. International Shoe, supra. The burden on the nonresident defendant is a primary concern. In appropriate cases, this burden will be considered in light of the other relevant factors such as the state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief when that interest is not adequately protected by his power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering fundamental substantive social policies. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); deReyes, supra.
The exhibits submitted by plaintiffs in support of their position show the following. The confidential private placement memorandum used in marketing the collateralized debentures offered by USLC identify Robert Spielman and Kenneth Germain as the people to contact through USLC for more information regarding these debentures. Spielman is described in the offering as the company's chairman, chief operating officer and secretary/treasurer. He is identified as the person primarily responsible for overseeing the company's financial affairs, including servicing all debenture holders. A USLC collateralized debenture purchased by two of the Louisiana plaintiffs on February 28, 1994 is signed by Spielman as treasurer of USLC. As president of USLC, Spielman wrote a letter to a Louisiana plaintiff acknowledging receipt of his subscription and check. A fax transmission by Amato of Sunpoint Securities directs an inquiry to Spielman concerning a debenture purchased by one of Sunpoint's clients. Finally, a letter from Spielman and another director of USLC dated June 13, 1995 advises all debenture holders of the significant financial losses sustained by USLC and that the company's chief executive officer, Kenneth Germain, had allegedly misappropriated corporate funds.
Plaintiffs argue that the holding in Fryar v. Westside, supra, is dispositive of the issue posed in the instant case. In Fryar, a bank officer executed certain investment contracts on behalf of his employer. It was admitted that the bank officer's activities in Louisiana were entirely in his capacity as a officer of the bank. Our Supreme Court held that the exercise of personal jurisdiction over the bank officer was reasonable, did not offend fair play and afforded substantial justice to the parties. In reaching that conclusion, the Court stated:
Although Davis signed the contract on behalf of his employer, he admitted that he was personally involved in the transaction. He was the principal for the Bank in this transaction. Since he was the only officer of Penn Square Bank directly involved and responsible for the Bank's commitments in this Louisiana contract, Davis had a duty to see that the Bank's obligations were carried out, or, alternatively, a duty to warn the other party that these obligations *745 were not being carried out. He had a duty to deliver the collateral and a duty to warn Bossier. Davis breached these duties and is personally liable for his negligent omissions. An employee cannot shield himself behind a corporate wall when he is the officer responsible for the corporation's acts in the particular transaction. Id. at 890.
In opposition, Spielman first argues that there were insufficient contacts by him to support the exercise of jurisdiction, and to that extent the language in Fryar actually supports his position. Second, he argues that if we do find sufficient contacts, then those contacts were made in Spielman's corporate capacity and the holding of Fryar can be distinguished on its facts. Spielman points out that in Fryar the court found that the corporate officer admitted his personal involvement in the transaction, whereas in the instant case there are no such admissions.
Undoubtedly, USLC's solicitations in Louisiana for the sale of its corporate debentures are sufficient contacts to satisfy the due process requirements for exercising jurisdiction over that corporation. Indeed, USLC did not contest jurisdiction. However, we observe that the corporate contacts evidenced by each exhibit refer to Spielman in a corporate capacity or are executed by him in some corporate capacity. He is described in the placement memorandum as the Chairman, Chief Operating Officer and Secretary/Treasurer. He signed the debenture as Treasurer. His June 27, 1994 letter is signed by him as president of USLC.
"It is settled that jurisdiction over individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself." Cobb Industries, Inc. v. Hight, 469 So.2d 1060, 1063 (La.App. 2nd Cir.1985). This doctrine is often times referred to as the "fiduciary shield doctrine" and has its origin in judicial interpretations of long-arm statutes.[2]Columbia Briargate Co. v. First National Bank in Dallas, 713 F.2d 1052 (4th Cir.1983), cert. denied, Pearson v. Columbia Briargate Co., 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). It is rooted in the principle that the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity. Id. When dealing with corporate officers, a court must look to the individual and personal contacts, if any, of the officer or employee, with the forum state. Cobb Industries, Inc., supra at 1064, citing Candy H. v. Redemption Ranch, Inc., 563 F.Supp. 505 (M.D.Ala.1983). If an officer or employee is engaged in activities within the forum states' jurisdiction which would subject them to the state's long arm statute, jurisdiction by that state may be proper. Briley Marine Service Inc. v. Toups, 551 So.2d 755 (La.App. 1st Cir.1989), writ denied, 553 So.2d 476 (La. 1989). Furthermore, if the corporation is not viable and the individuals are using it as a shield to conduct their personal activities a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals. Stuart v. Spademan, 772 F.2d 1185 (5th Cir.1985).
Relevant to the factual scenario before us are the cases which hold that the fiduciary shield doctrine will not defeat personal jurisdiction where a non-resident corporate agent commits a tort within a forum state which would subject him to personal liability under the laws of that state. Columbia Briargate Co., supra; see also, Idaho Potato Com'n v. Washington Potato Com'n, 410 F.Supp. 171 (D.Idaho 1975). Those holdings seek to harmonize the dichotomy created when, on the one hand, state substantive law imposes personal liability on a corporate agent for his acts committed in the forum state, while, at the same time, the fiduciary shield doctrine permits the corporate agent to defeat the forum state's jurisdiction by claiming his acts were in a corporate capacity. In Columbia Briargate Co., the court held that because South Carolina law imposed personal liability *746 on a corporate agent for misrepresentation and because the agent's alleged misrepresentation occurred while he was in South Carolina for a few days, jurisdiction was proper under South Carolina's long arm statute and the fiduciary shield doctrine was inapplicable.
Initially, we make the observation that as a general principle, a state's substantive law which imposes liability, standing alone, cannot be a basis for personal jurisdiction. Stated another way, the mere fact that a party may be responsible under the laws of this state does not mean that jurisdiction is automatically conferred. There still must be a showing that due process requirements of minimum contacts and fairness are met before a court can exercise jurisdiction over the non-resident.

MINIMUM CONTACTS:
We are satisfied that Spielman's contacts with Louisiana in connection with the sale of USLC's debentures are sufficient to satisfy due process requirements. Although Spielman personally never entered Louisiana, the placement memorandum was distributed here as part of the marketing scheme to sell USLC's debentures. In particular, Spielman is identified in that memorandum as the person to contact with respect to inquires about the debentures. He is further described as the "officer primarily responsible for overseeing the Company's financial affairs including servicing all debentures." He signed the debentures as USLC's treasurer. As president, he acknowledged receipt of the check and subscription document of a Louisiana resident and, he advised the Louisiana investors of USLC's financial bad news. In sum, there is no doubt that USLC marketed its debentures in Louisiana and Spielman was the person a Louisiana investor was directed to contact in connection with those debentures. Spielman's participation in the solicitation of Louisiana investors as evidenced by the information disseminated through the placement memorandum, is sufficient contact to subject him to the jurisdiction of Louisiana's courts. That conclusion, however, does not end the inquiry.

FAIR PLAY, SUBSTANTIAL JUSTICE AND THE FIDUCIARY SHIELD DOCTRINE:
Spielman argues that the "fiduciary shield doctrine" is applicable because all of his Louisiana contacts were in a corporate capacity. We disagree.
Assuming the allegations of plaintiffs' petition to be true, Spielman's liability under Louisiana law would attach with the dissemination in this state of misinformation in furtherance of the sale of USLC's debentures. Without question, USLC purposefully availed itself of the privilege of conducting business within this state. It sought Louisiana residents as prospective purchasers of its debentures. Through the placement memorandum, Spielman also availed himself of the privilege of soliciting Louisiana's residents for the benefit of his corporate employer. As a licensed securities dealer,[3] Spielman had or should have had sufficient knowledge of Louisiana's security laws to provide him fair warning that he might have personal exposure in the marketing of his corporate employer's securities in this state. Under these particular circumstances we find that notions of fair play and justice are not offended by requiring Spielman's presence in a Louisiana court. Louisiana has a strong interest in protecting its residents who purchase securities marketed in this state. Despite the fact that Spielman's actions were done in a corporate capacity, Louisiana, as a means of protecting its citizens, does not permit an executive's wrongdoing in the marketing of securities to escape personal responsibility via a corporate shield.
Hence, we hold that the fiduciary shield doctrine is not applicable in the instant case because the activity which forms the basis of Spielman's alleged liability occurred in Louisiana when the placement memorandum was disseminated here. His involvement in the marketing of USLC's debentures in Louisiana forms the necessary nexus with this state to satisfy due process minimum contact *747 requirements for the exercise of jurisdiction by our courts.
Accordingly, we reverse the trial court judgment, deny Spielman's exception to the jurisdiction and remand for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] R.S. 51:714B states as follows:

Every person who directly or indirectly controls a person liable under Subsection A of this Section, every general partner, executive officer, or director of such person liable under Subsection A of this Section, every person occupying a similar status or performing similar functions, and every dealer or salesman who participates in any material way in the sale is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reasons of which liability is alleged to exist. There is contribution as in the case of contract among several persons so liable.
[2] Apparently some courts have referred to the doctrine as a constitutional limitation on due process jurisdictional requirements. However, that proposition is readily debatable. It appears to be more frequently used in conjunction with state laws which protect the corporate officer or employee from personal liability for their activities in a corporate capacity. As discussed infra, it is not readily applicable where a state's substantive law "pierces" the corporate veil.
[3] Spielman's biographical sketch in the placement memorandum states that "[h]e is a licensed securities principal and a member of the National Association of Securities Dealers."