h CARAWAY, Judge.
Two of the three plaintiffs in this action, Office Dimensions, Inc. (“OD”) and Eubanks Custom Builders, Inc. (“ECB”), seek review of the trial court’s dismissal of their claims for lack of personal jurisdiction over the defendant. OD and ECB joined as plaintiffs with Office Dimensions-Louisiana, Inc. (“ODLa”) against the defendant, Charles E. King, a Tennessee resident, in a dispute over each corporation’s stock purchase agreement with King. Appellants complain that the trial court erred in concluding that King, while subject to “specific” personal jurisdiction for the claim of ODLa, was not subject to the “general” personal jurisdiction of the Louisiana court with respect to their two claims. Finding a lack of general jurisdiction, we affirm the judgment of the trial court.

Facts

King is a shareholder in three separate corporations engaged in the manufacture of mobile office facilities. Only one of the corporations, Office Dimensions-Louisiana, Inc., does business in Louisiana and is, as indicated by its name, a Louisiana corporation with a facility in Cullen, Louisiana. OD is a Tennessee corporation with its principal operations in Tennessee, and ECB is a Georgia corporation with its principal operations in Georgia. King resides in Tennessee and has never resided in Louisiana.
ECB and ODLa are owned by King and three other shareholders, William S. Yeaman, Justo F. Cadiz, and Thomas P. Eubanks. These individuals, with the exception of Eu-banks, also own OD. Each of the corporations entered into stock purchase or stock restriction agreements with each of their respective shareholders. The plaintiffs’ petition alleges that the separate but largely identical agreements grant each corporation the option to purchase the shares of any shareholder who ^disassociates himself from the management, operation or employment of the corporation. Each agreement provides that the purchase price will be finally and conclusively determined by an independent certified public accountant regularly engaged by the corporation and will be based upon the “book value” of each corporation. The OD and ECB agreements both have choice of law provisions requiring Tennessee law to govern any dispute arising out of the agreements, while the ODLa agreement states that Louisiana law will govern the contract.
The petition alleges that on July 27, 1997, King disassociated himself from the management, operation and employment of each cor *1054 poration. Thereafter, when the three corporations allegedly exercised their options to purchase King’s shares, King rejected the tender precipitating this action in the district court in Louisiana.
King met the plaintiffs’ petition with the declinatory exception to the personal jurisdiction over the defendant, as well as dilatory exceptions of prematurity and improper cu-mulation of actions. At the hearing, in lieu of testimony, both sides presented evidence by affidavit. Counsel for King stated that the exception to personal jurisdiction with respect to the claim of ODLa was abandoned, leaving only the exceptions to personal jurisdiction over the defendant regarding the claims of OD and ECB, and the exceptions of prematurity and improper cumulation of actions.
The affidavit of Yeaman stated that before the 1995 incorporation of ODLa, northwest Louisiana was identified (presumably by the common shareholders of ECB and OD) as a potential location to expand their business by adding another manufacturing facility. King was responsible for investigating and acquiring a site and made a number of trips to Louisiana for that purpose. He engaged the services 13oi a Louisiana realtor and dealt directly with representatives of the North Louisiana Industrial Park in Webster Parish. The contacts included personal visits, telephone communications and written correspondence.
After the incorporation of ODLa and until his disassociation with the business in July of 1997, King served as president of ODLa and was directly responsible for its management and operation. Yeaman identified numerous incidences in which King transacted business on behalf of ODLa, including the drawing of checks on ODLa’s local bank account. Reimbursement records were introduced for King’s expenses incurred during eight trips King made to Louisiana as president of ODLa. The duration of these trips averaged three to five days and totaled approximately thirty days over the two-year period.
Perhaps the largest collection of “contacts” with Louisiana were King’s telephone calls. Plaintiffs submitted telephone and fax logs indicating that King spoke with the Louisiana office in Cullen by telephone from his Hampshire, Tennessee office on a daily basis and sometimes more than once a day. Plaintiffs’ exhibits show that well over a thousand calls were made during the two-year period.
In King’s affidavit testimony in support of his exception, he states that he had no contacts with Louisiana regarding OD and ECB. The disputed stock purchase contracts with OD and ECB were both executed years before the incorporation of ODLa, and the three agreements were never contractually linked together in any manner. King asserts that he did not transact any business on his own behalf in Louisiana. However, we note that he did enter the stock purchase agreement with ODLa, and the plaintiffs’ allegations indicate that he loaned money to ODLa.
UFoIlowing the trial court’s dismissal of the claims of OD and ECB for lack of personal jurisdiction, we granted the corporations’ writ application to review the judgment below.

Discussion

The leading Louisiana Supreme Court case on personal jurisdiction is de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103 (La.1991). The de Reyes court extensively discussed the due process constraints on the exercise of personal jurisdiction in a suit not arising out of the defendant’s activities or contacts with the forum. Recognizing the distinction between the so-called “specific” and “general” bases for personal jurisdiction, the court said:
In interpreting the due process clause, the United States Supreme Court has recognized a distinction between two types of personal jurisdiction — “general” and “specific” jurisdiction. Burger King Corporation v. Rudzewicz, 471 U.S. at 473, n. 15, 105 S.Ct. at 2182, n. 15; Helicopteros, 466 U.S. at 414, 104 S.Ct. at 1872. “It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant’s contacts with the forum, the State is exercising ‘specific jurisdiction’ over the defendant.” Id., [at 414 n. 8,104 S.Ct.] at [1872] n. 8. But when a State exercises personal jurisdiction over a defendant in a suit not *1055 arising out of or related to the defendant’s contacts with the forum, the State has been said to be exercising “general jurisdiction” over the defendant. Id., at 414 n. 9,104 S.Ct. at 1872 n. 9.
Id., at p. 105.
The due process protections discussed in de Reyes are expressed in the applicable portions of Louisiana’s Long-Arm Statute, La. R.S. 13:3201, as follows:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, ás to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
******
IbB. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
OD and ECB recognize that, as Tennessee and Georgia corporations, respectively, their stock restriction agreements with King do not amount to King’s transacting any business in Louisiana. They, therefore, concede in argument that their claims under these shareholder agreements do not arise out of King’s activities in this state and that a “specific” jurisdictional basis for personal jurisdiction for their claims against King is not present. Thus, the claims of OD and ECB under their similar contracts with King may only proceed in Louisiana on the basis of general jurisdiction because King’s contacts with Louisiana are unrelated to their contractual disputes with him.

Continuous and Systematic Contacts

In evaluating a nonresident’s contacts with the forum, a court must determine whether the nonresident has purposefully availed himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protection of its laws. The defendant’s conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); Holt Oil & Gas Corporation v. Harvey, 801 F.2d 773 (5th Cir.1986).
To exercise general jurisdiction, due process requires that the nonresident defendant have “continuous and systematic contacts” with the forum state, de Reyes, supra at 107 and 108 discussing the two general jurisdiction cases of the U.S. Supreme Court: Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and Helicopteros Nacionales de Colombia, S.A. 6v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). See also, Clark v. America’s Favorite Chicken Co., 908 F.Supp. 390 (E.D.La.1995). To satisfy this requirement of “continuous and systematic contacts,” a plaintiff must establish a substantial connection between the nonresident defendant and the forum state. Credit Cheque Corporation v. Zerman, 1997 WL 786251 (N.D.Tex.1997). Merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum’s jurisdiction. Holt Oil & Gas Corporation, supra at 778. The question for the court is “whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state.” Brown v. Flowers Industries, Inc., 688 F.2d 328, 333 (5th Cir.1982), rehearing denied, 691 F.2d 502 (5th Cir.1982), cert denied, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, relate to whether it can be said that the defendant’s actions constitute purposeful availment. Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1268 (5th Cir.1981).
Apart from King’s activities in Louisiana as a corporate representative of ODLa (the effect of which will be addressed below), King’s contacts with Louisiana in his individual capacity involved only the events of 1995 when he took steps leading to the incorporation of ODLa. After incorporation on July *1056 20,1995, he executed, in his individual capacity, the disputed stock purchase agreement with ODLa personally binding himself as a shareholder. At some time after the incorporation, he personally loaned money to ODLa. Therefore, our initial inquiry is: Do these events which ended in 1995 amount to continuous and systematic 17contacts by King which now subject him personally to the general jurisdiction of this state?
In the most recent United States Supreme Court ease involving an assertion for general jurisdiction, Helicopteros, supra, the defendant corporation was sued in Texas on a tort claim which did not arise out of and was not related to the defendant’s activities in Texas. Those activities included the defendant’s contracting for helicopters and for other services with Texas-based entities. Nevertheless, the court held that that level of economic activity by the nonresident defendant with the forum state was insufficient to amount to “continuous and systematic general business contacts.” Id., 466 U.S. at 416, 104 S.Ct. 1868. Contrast, Holt Oil & Gas Corporation, supra.
We likewise view King’s business endeavors in setting up the Louisiana corporation and loaning it money in 1995 as a limited undertaking which does not constitute continuous and systematic contacts with this state. The defendant’s contacts with Louisiana were not such that he would reasonably anticipate being haled into court in Louisiana for contract disputes with Tennessee and Georgia corporations dealing with his business in those states.

Contacts as Corporate Representative

’OD and ECB further assert that King’s activities in his representative capacity as president of ODLa were continuous and systematic contacts which must also be weighed with King’s contacts in his private capacity discussed above. King denies that such contacts with Louisiana on behalf of ODLa may be attributed to him individually for the purpose of exercising personal jurisdiction over him. King therefore asserts the so-called fiduciary shield doctrine to discount altogether his activities undertaken on behalf of ODLa.
|8The United States Fifth Circuit Court of Appeal recognized and discussed the fiduciary shield doctrine in Stuart v. Spademan, 772 F.2d 1185 (5th Cir.1985). The court stated that the doctrine “holds that an individual’s transaction of business within the state solely as a corporate officer does not create personal jurisdiction over the individual though the state has personal jurisdiction over the corporation.” Id. at 1197. Thus, while the officer’s affirmative acts may fore-seeably create an expectation that the nonresident corporation may be forced to defend a suit in the forum, the corporate officer may have no such expectation. This would particularly be true in a general jurisdiction case, such as this dispute, where neither the corporation’s nor the officer’s contacts with the forum are related to the plaintiffs claim.
An exception to the fiduciary shield doctrine was recognized in Escoto v. U.S. Lending Corp., 95-2692 (La.App. 4th Cir.5/22/96), 675 So.2d 741, a case relied upon by appellants. In Escoto, the corporate president, Spielman, who had no personal contacts with Louisiana, was sued along with his corporation by disgruntled investors for violation of Louisiana’s Blue Sky Law for the fraudulent marketing of debentures in the state. Such security fraud results in personal liability to officers of the corporation, and Spielman’s involvement with the placement memorandum for the sale of the debentures in Louisiana clearly created such exposure despite his lack of presence in the state. The court held that “[djespite the fact that Spielman’s actions were done in a corporate capacity, Louisiana, as a means of protecting its citizens, does not permit an executive’s wrongdoing in the marketing of securities to escape personal responsibility via a corporate shield.” Id. at 746. The court thus recognized an exception to the | gfiduciary shield doctrine for the corporate officer’s intentional tortious or fraudulent actions.
Spielman’s activities as corporate officer in Escoto are clearly distinguishable from King’s activities on behalf of ODLa in this case. Spielman’s holding himself out as the corporate contact person in the misleading placement memorandum created a basis for personal liability for security fraud. While he acted “in a corporate capacity,” he had no *1057 authority from the corporation as its agent to break Louisiana’s security laws. In comparison, King’s contracting of business, including signing checks in the name of ODLa, resulted from the authority of the corporation and did not bind him personally for the performance of ODLa’s contracts. La. C.C. art. 3016. The exception to the fiduciary shield doctrine recognized in Escoto of necessity involves the officer/agent’s acting outside of his legitimate corporate authority or shield. The officer therefore individually commits a tortious offense which becomes the crucial factor for the exercise of specific jurisdiction over him. See, La. R.S. 13:3201(A)(4).
This case is not a specific jurisdiction case, and King did not stray beyond the exercise of legitimate corporate authority. Instead, all of King’s actions as president, primarily conducted from his Hampshire, Tennessee residence, appeal' as authorized actions of an agent on behalf of the corporation which do not allow for a basis for the personal liability of King. He therefore cannot be said to have personally availed himself of the privilege of conducting activities within the state by his actions on behalf of ODLa. The fact that OD’s and ECB’s contracts are unrelated to King’s activities with the separate Louisiana corporation created no expectation that he could be haled into a Louisiana court for appellants’ contract claims. We therefore hold, in light of the theory underlying the fiduciary shield [ipdoctrine, that King’s authorized activities as the agent of ODLa have no significant weight for the measurement of continuous and systematic contacts which are necessary to support Louisiana’s exercise of general jurisdiction over King. Thus, appellants having failed to meet their burden of showing King’s continuous and systematic contacts with this state, Louisiana lacks personal jurisdiction in this matter.

Conclusion

The trial court’s judgment maintaining the exceptions of the defendant King over the claims of OD and ECB is affirmed. Costs are assessed to appellants.
AFFIRMED.