# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 25, 2024

Lyle W. Cayce
Clerk

———————

No. 23-30783

———————

Kenny Savoie,

*Plaintiff—Appellant*,

*versus*

Thomas Pritchard,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:21-CV-1910

———————————————————————

Before Dennis, Southwick, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

In this breach-of-contract case arising from a wage payment dispute, former employee and Louisiana resident Kenny Savoie (Savoie) appeals the dismissal of claims against his boss and Virginia resident, Thomas Pritchard (Pritchard), for lack of personal jurisdiction. Pritchard contends the fiduciary shield doctrine precludes jurisdiction based on his purely corporate contacts with Louisiana. Savoie counters that the fiduciary shield doctrine is dead. Because we find life within it, we AFFIRM.

No. 23-30783

## I. Factual and Procedural Background

Savoie is a former employee of Pritchard Energy Advisors, LLC d/b/a Pritchard Griffin Advisors (PGA). Co-owned by Pritchard and another individual named Ken Griffin (Griffin), PGA was a Texas LLC and financial services company that raised capital to facilitate oil and gas transactions. In 2016, before Savoie's employment with PGA, PGA and an energy company, Empire Petroleum Corporation (Empire), entered into an agreement whereby PGA would raise capital for Empire in exchange for a retainer, success fee, and common stock.

In July 2017, PGA offered Savoie a compensation-based senior position within the company, assisting PGA clients with securing upstream oil and gas opportunities. The offer letter, signed by Griffin, promised a compensation structure with splits favorable to Savoie based on deals he originated and even those he did not. The offer also indicated he would receive 5% on capital raised. Under these terms, Savoie began working with Pritchard to assist Empire in developing its oil and gas operations.

Shortly after Savoie joined PGA, Pritchard became Empire's CEO. In September 2018, Savoie followed Pritchard, joining Empire as Vice President of Operations. On April 2, 2019, Empire terminated Savoie. Following his termination, Savoie emailed Pritchard seeking compensation under the terms of the 2017 offer letter for Savoie's allegedly successful efforts as a PGA employee on Empire's behalf. Pritchard responded, explaining that Savoie was not entitled to compensation because PGA had not received any on the projects Savoie mentioned. This suit followed.

On July 1, 2021, Savoie filed his complaint in the United States District Court for the Western District of Louisiana asserting claims for breach of contract and violations of the Louisiana Wage Payment Act. Savoie alleged that PGA received ample fees and revenue from Empire as a result of

2

Savoie's work, but PGA failed to pay him the commissions due under the 2017 agreement. As to Pritchard specifically, Savoie alleged that Pritchard breached the 2017 offer letter and the Louisiana Wage Payment Act by "[p]ersonally engag[ing] in fraudulent and deceitful conduct" when he "inform[ed] Mr. Savoie that PGA had not received any retainer money or any payments on Mr. Savoie's projects and that Mr. Savoie was therefore not entitled to any compensation." He further alleged that Pritchard "[e]xhibited a conflict of interest by serving as both a member of PGA and CEO/Director of Empire," which resulted in "Pritchard not collecting, on behalf of PGA, fees and other payments that were due to PGA from Empire."

Following jurisdictional discovery and briefing, the district court dismissed Pritchard for lack of personal jurisdiction. The court concluded that Pritchard's suit-related contacts were covered by the fiduciary shield doctrine and Savoie failed to establish any exception that would permit those contacts to be attributed to Pritchard personally. Savoie appeals.

## II.    Jurisdiction & Standard of Review

The district court had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, and we have appellate jurisdiction over the order dismissing Pritchard for lack of personal jurisdiction under 28 U.S.C. § 1291. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 45 (2020). Where there is no dispute of relevant facts, the exercise of personal jurisdiction is a question of law subject to de novo review. *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 368–69 (5th Cir. 2024) (citation omitted).

As the party invoking the court's jurisdiction, Savoie "bears the burden of establishing that [Pritchard] has the requisite minimum contacts" with Louisiana to justify jurisdiction. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (citation omitted). When "the court rules on a motion to dismiss for lack of personal jurisdiction

without holding an evidentiary hearing, that burden requires only that the nonmovant make a *prima facie* showing." *Id.* While the district court must accept as true the allegations in the complaint, it "is not obligated to consult only [those] assertions . . . in determining whether a *prima facie* case for jurisdiction has been made." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). Instead, the court "may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citation omitted). When considering the host of allegations and evidence, we accept as true "plaintiff's uncontroverted, nonconclusional factual allegations" and "resolve all controverted allegations in the plaintiff's favor." *Def. Distrib. v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020) (citation omitted).

## III.    Analysis

A federal court sitting in diversity may assert personal jurisdiction over the defendant if (1) the state's long-arm statute permits it, and (2) exercising jurisdiction would not violate the Fourteenth Amendment's Due Process Clause. *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318 (5th Cir. 2020). Louisiana's long-arm statute is "coextensive" with the limits of constitutional due process. *Id.* (quoting *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188, 1192 (La. 1987)). For this reason, "the sole inquiry" is usually "whether exercising jurisdiction would violate the Due Process Clause." *Id.* Due process is satisfied where the defendant "purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (citation omitted).

Sufficient contacts will give rise to either general or specific jurisdiction. *Shambaugh & Son, L.P.*, 91 F.4th at 372. Because Savoie does not press general jurisdiction, only *specific* personal jurisdiction is at issue here. This circuit engages in a three-step analysis to determine whether a court may exercise specific jurisdiction over a non-forum defendant. The analysis considers:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Id.* (citation omitted). Savoie must establish the first two prongs before the burden shifts to Pritchard to show that exercising jurisdiction would be unfair or unreasonable. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

## A. The fiduciary shield doctrine applies to this contract case.

Pritchard raises the fiduciary shield doctrine as an obstacle to establishing personal jurisdiction. The shield, if applicable, prevents the exercise of personal jurisdiction based solely on acts undertaken in a defendant's corporate capacity.[1] Because the doctrine originates from "judicial interpretations of long-arm statutes"—not the federal due process clause—the shield exists only to the extent state law recognizes it. *Escoto v. U.S. Lending Corp.*, 675 So.2d 741, 745 (La. App. 4th Cir. 1996); *see also*

---

[1] PGA is a limited liability corporation. We refer to Pritchard's contacts made in his capacity as an employee of the LLC as "corporate" contacts.

No. 23-30783

*Newsome v. Gallacher*, 722 F.3d 1257, 1278 (10th Cir. 2013) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)) ("[T]he Supreme Court has made clear "that the fiduciary shield is a question of state law, not due process.").[2]

The Louisiana Supreme Court has not *expressly* adopted the fiduciary shield doctrine. In *Southeast Wireless Network, Inc.*, however, a majority of the court implicitly recognized the shield by "adopt[ing] the reasoning" of a Louisiana appellate court which defined the shield and its exceptions. *Se. Wireless Network, Inc. v. U.S. Telemetry Corp.*, 954 So.2d 120, 128–29 (La. 2007) (citing *Escoto*, 675 So.2d at 745–46). The Louisiana Supreme Court explained that the shield is "rooted in the principle that the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity." *Id.* at 128 (quoting *Escoto*, 675 So.2d at 745). Nevertheless, the shield "will not defeat personal jurisdiction where a non-resident corporate agent commits a tort within a forum state which would subject him to personal liability under the laws of

---

[2] Savoie contends that the death knell tolled for the shield in *Calder* and *Keeton*. This contention fails to appreciate the distinction between what is permissible under the Due Process Clause and the limitations a state may impose upon personal jurisdiction. *Calder* and *Keeton* addressed the question whether due process requires application of "the fiduciary shield (although not invoked by name)." *Newsome*, 722 F.3d at 1276. The Supreme Court decisively held that it does not. *See Calder*, 465 U.S. at 790; *see also Urquhart-Bradley v. Mobley*, 964 F.3d 36 (D.C. Cir. 2020) ("[T]he Due Process Clause does not incorporate the fiduciary shield doctrine."). Instead, under the Due Process Clause, defendants' "status as employees does not somehow insulate them from jurisdiction." *Calder*, 465 U.S. at 790. But this does not end the matter. Although "the fiduciary shield doctrine is not required by the Due Process Clause," a state may still "choose to adopt such a limitation as a matter of its own law." *Urquhart-Bradley*, 964 F.3d at 47. The dispositive question then is whether Louisiana adopts the shield as a matter of its own law. While the shield may have come under fire in other jurisdictions, *see, e.g.*, *id.*, our reading of Louisiana law precludes us from tossing it on the cart. It is, after all, "not dead yet." Christian Borle et al., *Monks Chant/He is Not Dead Yet*, SPAMALOT (2004).

that state." *Id.* Applying these principles, the court held that the shield was "not applicable" to a non-resident director of a Louisiana corporation who allegedly committed a tort within the state. *Id.* at 129. In sum, as a concurring justice explained, a majority of the court "assume[d] that [the Louisiana Supreme Court] ha[d] adopted the shield and proceed[ed] to explain why this case represent[ed] an exception to it." *Id.* at 129 (Kimball, J., concurring).

Because the fiduciary shield doctrine lives only to the extent state law recognizes it, and the Louisiana Supreme Court appears to assume its existence, we proceed cautiously upon that assumption, applying the shield as defined in *Southeast Wireless Network, Inc.* and *Escoto.* Read together, these cases suggest that when a defendant raises the shield, contacts made in his corporate capacity do not count against him for purposes of personal jurisdiction unless one of two exceptions apply: (1) the defendant allegedly engaged in a tort for which he may be personally liable, or (2) the plaintiff demonstrates cause to pierce the corporate veil. *Se. Wireless Network, Inc.*, 954 So.2d at 128–29 (tort exception); *Escoto*, 675 So.2d at 745 (veil-piercing exception). Because Savoie concedes that all of Pritchard's suit-related contacts were made in his corporate capacity, Savoie must establish an exception—a feat he has not accomplished.

### B. Savoie fails to satisfy the jurisdictional veil-piercing exception.

We turn first to the veil-piercing or alter-ego exception. *See Escoto*, 675 So.2d at 745 (citing *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985)) (explaining the veil-piercing exception). The veil-piercing test for purposes of personal jurisdiction is "less stringent than that for liability." *Stuart*, 772 F.2d at 1198 n.12. Under Texas law,[3] the primary factor for jurisdictional veil-

---

[3] Whether the applicable law is the law of the state of formation (Texas) or that of the forum state (Louisiana), the outcome is the same. *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 546 (5th Cir. 2014) (pretermitting conflict-of-

piercing is the defendant's control of internal business operations and affairs of the corporation. *Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 212–13 (5th Cir. 2015) (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007)). The control must be to a greater degree "than that normally associated with common ownership and directorship" such that the individual and the corporation "cease be separate." *Id.* at 213. "[A]llegations of fraud" are "[n]ot pertinent to [the] *jurisdictional* veil piercing analysis." *Id.*[4] Instead, the focus is control. *See id.*

Courts may also consider other factors, *id.*, such as "the degree to which corporate and individual property have been kept separate, the amount of financial interest, ownership, and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes," *Wilmington Tr., Nat'l Ass'n v. Hsin-Chi-Su*, 573 S.W.3d 845, 855 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citation omitted) (applying *PHC-Minden, L.P.*, 235 S.W.3d at 169). Additional factors may include "payment of alleged corporate debt with personal checks or other commingling of funds, representations that the individual will back the corporation financially, the diversion of corporate profits for personal use, and inadequate capitalization." *Id.* But "[a]n individual's status as an officer,

---

law analysis where "the outcome would be the same under the application" of either the law at issue "or Louisiana law."). Indeed, Louisiana courts consider similar factors to those identified by Texas courts. *See, e.g.*, *id.* (quoting *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257–58 (La. App. 1st Cir. 1991)).

[4] The district court incorrectly applied the *substantive* veil-piercing test for breach-of-contract claims, which requires a showing of actual fraud. *See* Tex. Bus. Orgs. Code § 21.223(a)(2)-(b); *Belliveau v. Barco, Inc.*, 987 F.3d 122, 128–29 (5th Cir. 2021). Under *Licea*, the substantive "actual fraud" test has no relevance to the *jurisdictional* veil-piercing analysis here. 952 F.3d at 213. Nevertheless, because the court separately applied the substantive alter-ego test, which includes many of the factors required for jurisdictional veil-piercing, the actual fraud detour does not require reversal.

director, or shareholder of an entity, standing alone, is not enough to support an alter ego finding." *Id.* (citations omitted).

Applying the relevant factors, the district court concluded that "Savoie presented no evidence that PGA was Pritchard's alter ego, such as whether he used PGA for personal purposes or commingled his personal assets and accounts with those of PGA," and offered "no evidence suggest[ing] that Pritchard used PGA as a conduit of another corporation." We agree. Savoie's complaint makes no mention of Pritchard dominating PGA, commingling his assets with PGA's, or diverting corporate profits for *personal* use. Savoie's complaint merely alleges that Pritchard (1) lied to him about whether PGA received payment on Savoie's projects, and (2) exhibited a conflict of interest, which resulted in PGA not collecting fees Empire allegedly owed—a benefit that would have inured to *Empire*, not necessarily Pritchard. While a conflict of interest may give rise to a breach of fiduciary duty, Savoie has neither pled that claim nor demonstrated that such a breach satisfies any of the jurisdictional veil-piercing factors.

The only evidence Savoie points to on appeal is a two-page table of "Veil Piercing Factors." At best, the evidence is patchy. And none of the evidence addresses the core element of jurisdictional veil-piercing: domineering control of PGA. While any controverted allegations or discrepancies in the evidence must be resolved in Savoie's favor, the paltry evidence of the key veil-piercing factor does not prima facie satisfy this exception.

### C. Savoie fails to satisfy the tort exception.

Having failed to establish a basis for veil-piercing, Savoie is left with the tort exception. *See Se. Wireless Network, Inc.*, 954 So.2d at 128 (The shield "will not defeat personal jurisdiction where a non-resident corporate agent commits a tort within a forum state."). But, including the Louisiana Wage Payment Act claim, Savoie asserted only contract claims. *See Grabert v. Iberia*

*Par. Sch. Bd.*, 638 So.2d 645, 647 (La. 1994) ("[T]he employer's failure to pay the full and proper compensation for services provided gives rise to an action for breach of contract for which the remedy is recovery of wages."). Because he failed to assert a tort claim, the tort exception to the shield does not apply.

Savoie resists this conclusion, asserting that *allegations* of tortious conduct will suffice even when no tort claim is pleaded. He contends unpersuasively that our line of fiduciary shield cases supports this conclusion. Setting aside the fact that none of these cases addressed the shield under Louisiana law, each case Savoie cites involved an expressly pleaded tort claim or statute providing for *personal* liability. *See Lewis v. Fresne*, 252 F.3d 352, 359 n.6 (5th Cir. 2001) (shield inapplicable in securities and common law fraud case where company president allegedly "deliberately misled" the plaintiff); *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794–95 (5th Cir. 2007) (shield inapplicable in fraud case where plaintiff alleged the corporate officer individually engaged in tortious conduct); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492 n.9 (5th Cir. 2018) (shield "inapplicable" where plaintiff asserted a fraud claim against corporate president); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 973 (5th Cir. 1984) (shield inapplicable where "[m]ost importantly," the officer was "sued for violations of [a] federal statute" which explicitly provided for his individual liability). But when, as here, a plaintiff brought merely a breach-of-contract claim, the court applied the fiduciary shield, holding that it could not impute the corporation's contacts to the officer unless the plaintiff proved the alter ego exception, which he failed to do. *Stuart*, 772 F.2d at 1197–98.

"[S]pecific personal jurisdiction is a claim-specific inquiry," *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The court therefore cannot

predicate jurisdiction on Savoie's allusion to *potential* tort claims he did not plead. The tort exception does not apply.

## IV.    Conclusion

Pritchard raised the fiduciary shield, and Savoie has not overcome it. Because Savoie fails to establish any suit-related contacts made in Pritchard's personal capacity, we AFFIRM the district court's dismissal for lack of personal jurisdiction.