# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00289-SCT

*F. L. CAPPAERT*

*v.*

*WALKER, BORDELON, HAMLIN, THERIOT AND HARDY*

### CONSOLIDATED WITH

#### 93-CA-00290-SCT

*WREN C. WAY*

*v.*

*WALKER, BORDELON, HAMLIN, THERIOT AND HARDY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/93 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID M. SESSUMS |
| | WREN C. WAY |
| ATTORNEYS FOR APPELLEES: | PAT H. SCANLON |
| | JOHN S. SIMPSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 9/12/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/96 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. The present case calls upon this Court to review the granting of full faith and credit by the Circuit Court of Warren County to a default judgment obtained in Louisiana against two residents of this State. Said residents contend that the default judgment should not have been granted full faith and credit because the Louisiana court lacked personal jurisdiction over them and/or because the judgment was a result of fraud on the part of the plaintiffs. Finding the circuit court to have properly

ruled in this regard, this Court affirms.

## II. STATEMENT OF THE FACTS AND CASE

¶2. On October 21, 1988, F.L. Cappaert ("Cappaert"), Wren C.Way ("Way"), and David R. Price ("Price") entered into a written agreement to "create a joint venture for profit that would include the purchase, sale, management or operation of radio stations, their assets, licenses, etc." Pursuant to the agreement, Price was responsible for the day-to-day management of the radio stations, and Cappaert was responsible for providing or securing funding for the enterprise. Price became involved in the ownership and operation of several radio stations, including KNEK in Opelousas, Louisiana, as well as stations WOKJ in Mississippi and KBRA in Texas.

¶3. In late 1988, Price began utilizing the services of the law firm of Walker, Bordelon, Hamlin, Theriot, and Hardy ("Walker, Bordelon") in connection with the operation of the radio stations. On one occasion, a Walker, Bordelon attorney prepared a collateral mortgage and pledge agreement from Price to Cappaert, pursuant to which Cappaert lent Price money to finance the purchase of certain radio facilities located in Louisiana. In return for this loan, Price gave Cappaert a lien upon the purchased assets in the amount of $350,000.

¶4. Of significant dispute in the present case is the issue of whether Cappaert and Way had any ownership interest in the stations which would create a joint liability on their behalf for the legal services rendered by Walker, Bordelon. Walker, Bordelon points to a bond application signed by Cappaert on February 3, 1989, on behalf of WOKJ in Jackson, Mississippi, in which Cappaert represented to the bonding company that he, Price and Way each held a one-third ownership in the station.

¶5. Cappaert, in turn, points to the fact that, although the radio stations in question operated at a loss, Price was the only one of the three men to claim said losses as deductions on his income tax returns. Cappaert also notes that Walker, Bordelon represented to the FCC in documents prepared for and filed on behalf of Price that Price was the sole owner of the stations in question. Walker, Bordelon responds, however, that said firm was operating under the attorney-client relationship in filing said documents with the FCC and that they were merely maintaining the confidences of their client by failing to disclose said information to the FCC.

¶6. Walker, Bordelon was not paid for $33,448.08 in legal services performed in connection with the radio stations in question, and they initially attempted to collect said amount only from Price. In August 1989, however, Price for the first time provided Walker, Bordelon with a copy of the joint venture agreement, but he told Ashton Hardy, a partner at Walker, Bordelon, that the agreement did not create any ownership interest in the stations in Cappaert or Way. Hardy advised Price, in writing, to obtain an opinion letter from Mississippi counsel so stating, but Price never provided Hardy with such a letter. In January 1990 Walker, Bordelon made formal written demand, pursuant to the Louisiana Open Account Statute, on Price, Cappaert, and Way to satisfy the debt in question.

¶7. On March 30, 1990, Walker, Bordelon filed a Suit on Open Account in the Civil District Court for the Parish of Orleans, Louisiana, in connection with the debt in question. Walker, Bordelon asserted in the suit that the joint venture agreement provided for "the financial responsibility of (Price, Cappaert, and Way) for the acquisition/purchase of radio stations." Although Cappaert and

Way were personally served with a summons and a copy of the complaint as required by Louisiana law, they nevertheless failed to file and answer or otherwise respond to the suit. On June 19, 1990, a default judgment was rendered by the Louisiana Court in favor of Walker, Bordelon against Price, Cappaert, and Way in the amount of the $33,448.08 debt in question, along with interest, attorney's fees, and costs.

¶8. On December 12, 1990, Walker, Bordelon through counsel caused the Louisiana judgment to be filed with the Circuit Court of Warren County, Mississippi, pursuant to the Uniform Enforcement of Foreign Judgments Act, Miss. Code Ann. § 11-7-301 et. seq. On January 11, 1991, Cappaert and Way filed a complaint in Warren County against Walker, Bordelon, challenging the actions of said firm in enforcing the judgment against them. On February 16, 1993, the circuit court ruled that the Louisiana judgment against Cappaert and Way was entitled to be enforced in Mississippi and that Cappaert and Way's counterclaim was without merit. Cappaert and Way timely filed an appeal from this judgment, and the proceedings were consolidated by this Court for the purposes of this appeal.

### III. LEGAL ANALYSIS

**A. Did the Louisiana Court lack jurisdiction to render the default judgment against appellants, F. L. Cappaert and Wren C. Way?**

¶**9.** The first point of error concerns the jurisdictional aspect of the issue of whether or not the default judgment rendered in Louisiana against Cappaert and Way should be entitled to full faith and credit in the courts of this State. The United States Constitution requires the courts of this State to give full faith and credit to all final judgments of other states and federal courts unless:

(1) The foreign judgment was obtained as a result of some false representation without which the judgment would not have been rendered, *or*

(2) The rendering court did not have jurisdiction over the parties or the subject matter.

*Davis v. Davis*, 558 So.2d 814, 817 (Miss. 1990).

¶10. Thus, if Cappaert and/or Way can show that the Louisiana court lacked jurisdiction over them, then the trial court would have been in error in granting full faith and credit to the Louisiana judgment against one or both of them. Effective September 1, 1987, the Louisiana legislature amended the Louisiana long arm statute to provide that:

A court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the Constitution of this state and of the Constitution of the United States.

La. R.S. 13:3201(b). In *Superior Supply v. Associated Pipe and Supply*, 515 So.2d 790, 792 (La. 1987), the Louisiana Supreme Court noted that this amendment was designed to ensure that the long arm jurisdiction of a Louisiana court extends to the limits allowed under considerations of constitutional due process as set forth by the United States Supreme Court.

¶11. The standards for constitutional due process in the context of personal jurisdiction as set forth by the United States Supreme Court are familiar. A defendant must have certain minimum contacts

with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310. A defendant's contacts with the forum state must be such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286.

¶12. With regard to Cappaert, the due process requirements are clearly met, given that the record indicates that he held a mortgage interest on the realty and personalty of KNEK in Louisiana and provided Price with hundreds of thousands of dollars in funds to operate said radio station. Furthermore, Cappaert conceded on cross-examination that radio station KNEK was purchased pursuant to the joint venture agreement reached between the parties and that he furnished a great deal of funds for the operation of said radio station. It is unclear whether the agreement to undertake a joint venture entered into among the parties was sufficient to create a partnership among these men, and this issue would have presumably been the primary one at trial if Cappaert and Way had elected to defend against the suit on open account in Louisiana. It is clear, however, that Cappaert made deliberate, substantial, and sustained contacts with Louisiana in order to further his business interests there and that he was properly subjected to the jurisdiction of the Louisiana courts.

¶13. Cappaert argues that, while he may have had minimum contacts with Louisiana, the dispute in the present case nevertheless did not arise out of these contacts and he should thus not be subject to the jurisdiction of the Louisiana courts in the present case. In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), the United States Supreme Court noted that:

> When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the state and the foreign corporation.

¶14. Contrary to Cappaert's protestations, the suit in question did in fact arise out of his activities in Louisiana. The legal services performed by Walker, Bordelon involved, at least to a large degree, the operations of the radio station KNEK, which Cappaert financed and whose operations he closely monitored. As mentioned earlier, Walker, Bordelon prepared the legal documentation for the mortgage agreement by which Cappaert lent money to Price, and said work clearly related to the contacts which Cappaert had with Louisiana.

¶15. Even assuming, arguendo, that the lawsuit in question did not arise out of Cappaert's activities in Louisiana, said activities were nevertheless sufficient to give rise to a finding that Cappaert had engaged in "systematic and continuous" activities in Louisiana which properly subjects him to the general jurisdiction of Louisiana courts under *Helicopteros*, 466 U.S. at 414. Cappaert's business activities in Louisiana were not transitory, but rather took place over a period of years and constituted "systematic and continuous" contacts with Louisiana.

¶16. The issue of whether Way had minimum contacts with Louisiana presents a much closer issue, but it appears that the circuit judge was nevertheless correct in ruling that Way did have such minimum contacts. The judge noted in his ruling that Way responded to Walker, Bordelon's demand

letters to Cappaert and Way with a letter stating that the "venture with Mr. Price includes only stations WOKL, KBRA, and KNEK." This letter contributed to the judge's conclusion that Way was engaged in a "venture" which included KNEK in Louisiana.

¶17. The circuit judge stated in his ruling that the testimony at trial indicated that both Cappaert and Way disbursed funds and monitored the financial status of KNEK. Way denies that he did in fact monitor the financial status of KNEK, and his precise role in the joint venture is less than clear. Ashton Hardy noted in his testimony that Way had "worked intensively with our firm, to prepare, to be sure that the documents (with regard to the Louisiana radio station) were all prepared and in order," and it thus appears that Way offered his legal expertise in assisting the joint venture.

¶18. The review of jurisdictional matters by this Court is on a *de novo* basis, but the jurisdictional issues in the present case center largely around findings of fact on the part of the circuit judge with regard to the extent of Cappeart and Way's involvement in the joint venture. It is clear that the circuit judge who heard the testimony of Way was in a much better position than this Court to gain a "feel" for the extent to which Way actually did participate in the joint venture.

¶19. Way testified extensively about the extent of his contacts with Louisiana and the circuit judge found said contacts to be "sustained and deliberate". While Way's contacts with Louisiana were not as extensive as Cappaert's, the circuit judge found that his sustained involvement with KNEK over a period of years was sufficient to subject him to the jurisdiction of Louisiana courts. This Court cannot say that the judge was in error in so ruling. Accordingly, this point of error is overruled.

> **B. The Louisiana judgment is not entitled to full faith and credit by the courts of this State.**
>
> **C. Was the Louisiana judgment procured as a direct result of fraud and misrepresentation of both law and facts to the Louisiana court?**
>
> **D. Would the Louisiana default judgment be annulled by a Louisiana Court?**

¶20. Points of Error C and D are discussed together as they involve similar issues and standards of review. In addition, these two points of error roughly parallel the two prongs of a test set forth by this Court to determine whether a judgment of a foreign court which had proper jurisdiction over the parties should nevertheless not be enforced. This Court noted in ***Reeves Royalty Co., Ltd. v. ANB Pump Truck Service***, 513 So.2d 595 (Miss. 1987) that, with regard to the rule of law requiring this Court to grant full faith and credit to foreign judgments:

> One qualification to this rule, however, recognized by courts of all states, is that if the foreign judgment itself was obtained as a result of some false representation without which the judgment would not have been rendered, *and* (emphasis added) of such nature that the court of that state would relieve the judgment debtor from its effect, a court of this state may refuse to enforce it. This was the law in this state prior to adoption of the Uniform Enforcement of Judgments Act and the Act was not intended to alter this rule. (citation omitted).

*Reeves*, 513 So.2d at 598.

¶21. Thus, as this Court made clear in *Reeves*, Cappaert and Way must clear two hurdles in

establishing that the circuit court was in error in enforcing the Louisiana judgement. First, they must show that the Louisiana judgment was obtained as a result of some false statement or misrepresentation without which the judgment would not have been rendered. Secondly, they must establish that the judgment would not be enforced upon collateral attack in a Louisiana court.

¶22. With regard to the first prong of the test discussed in *Reeves*, Cappaert asserts that a misrepresentation occurred in the form of Walker, Bordelon partner Ashton Hardy's alleged statement to Wren Way in which, Way claims, Hardy assured Way that Walker, Bordelon would not seek to collect the debt from anyone other than David Price. As Cappaert notes in his brief, *Reeves* involved a similar assurance by a creditor that he would not seek to enforce the judgment against Reeves, which, Reeves claimed, led him to not defend against the lawsuit. *Reeves* is distinguishable, however, given that Reeves, unlike Cappaert and Way, filed an answer in said suit but failed to defend against it after allegedly receiving the assurances in question.

¶23. The circuit judge in *Reeves* was skeptical of Reeve's claim, and the circuit judge in the present case similarly stated that he did not consider the evidence to have been "clear and convincing" that Hardy actually made the statements attributed to him by Way. The circuit judge in the present case noted in his ruling that:

> Some testimony was adduced by Way as to an agreement not to pursue the actions against the Defendants if Price signed and returned certain documents. No evidence was introduced that these documents were ever returned to Plaintiffs and these attempted arrangements took place prior to (emphasis in original ruling) the demand letters and summons with complaint. Not only did the Defendants fail to prove such extrinsic fraud by clear and convincing evidence, the evidence was clear that no such extrinsic fraud was perpetrated upon Defendants.

Thus, the circuit judge did not consider Way's testimony to have established by clear and convincing evidence that such a fraud was committed in the procurement of the judgment.

¶24. Moreover, the present case can be distinguished from *Reeves* in two additional ways. First, although this Court noted in *Reeves* that the trial judge had been skeptical of the testimony of Reeves regarding the assurance that the suit would not be pursued, it was emphasized that Reeve's testimony that such an assurance was made was uncontradicted and this Court accordingly reversed the circuit judge. In the present case, by contrast, Ashton Hardy denied making the assurance attributed to him by Way, testifying that he had let Way know that a suit would be filed if various documents relating to a settlement of the dispute were not returned.

¶25. Secondly, as emphasized by the trial judge, the alleged assurance given to Way by Hardy occurred *prior* to the filing of the suit against Cappaert and Way, as opposed to after the suit was filed in *Reeves*. As an attorney, Way is obviously aware that a prior assurance that a suit would not be filed is not a basis for failing to file an answer to said suit once it is filed. If Cappaert and Way felt that the suit on open account was without merit and/or frivolous, then the proper course would have been to file an answer to said suit in which they asserted their defenses and filed a claim for attorneys' fees and sanctions under Rule 11 or Louisiana's equivalent thereof.

¶26. Walker, Bordelon did nothing to prevent Cappaert and Way from failing to answer the complaint, and any assurances they made that they would not file suit, even if accepted as true,

occurred prior to the filing of the suit. Cappaert and Way also assert that an accord and satisfaction was reached which resolved the dispute among the parties. The existence of such an accord and satisfaction is very much disputed by Walker, Bordelon, but, even assuming that such a defense exists, it constitutes an affirmative defense should have been asserted in an answer to the suit. Thus, the trial judge was correct in ruling that Cappaert and Way failed to prove a "false representation without which the judgment would not have been rendered" and the first part of the test set forth in *Reeves* is not met.

¶27. Even assuming that the first part of the test were met, however, the second part of said test is not met, given that it does not appear that Cappaert and Way would be able to sucessfully attack the default judgment in a Louisiana court. Cappaert correctly notes that extrinsic or actual fraud is not required for the annulment of a default judgment under Louisiana law. Louisiana Statutes Annotated, C.C.P. Article 2004 provides that:

> A final judgment obtained by fraud or ill-practices may be annulled.

> An action to annul a judgment on these grounds must be brought within one (1) year of the discovery by the plaintiff in the nullity action of the fraud and ill-practices.

In *Alker v. Martinez*, 477 So.2d 855 (La.App. 5 Cir. 1985), a Louisiana Court of Appeals noted that:

> C.C.P. Article 2004 is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable.

*Alker*, 477 So.2d at 857(*citing* **Kem Search, Inc. v. Sheffield**, 434 So.2d 1067 (La. 1983)).

¶28. *Kem Search*, cited in *Alker*, contained factual and legal issues very similar to those in the present case. In *Kem Search*, the Louisiana appellate court noted that:

> Conduct which prevents an opposing party from having an opportunity to appear or to assert a defense constitutes a deprivation of his legal rights. Thus, when a party fails to defend a suit because of the failure of the opposing party to warn him that a default would be taken, this judgment may be annulled when the parties had an agreement to give notice of any action taken on the suit, or the defaulted party relied on facts which he reasonably believed created such an agreement, and the enforcement of the judgment would be unconscionable and inequitable.

*Kem Search*, 434 So.2d at 1070.

¶29. Thus, Louisiana courts, while not requiring that actual fraud be proven to void a judgment, do appear to require that the defendant prove some level of fraud or ill-practices in the procurement of the judgment and that he demonstrate that the enforcement of the judgment is unconscionable under the facts of the case. That is, the ill practices must have served to prevent the defendant or prospective defendant from exercising his rights. It is clear that the Louisiana courts do not view Rule 2004 as a means to allow a defendant who was properly served with process but through his

own choice failed to defend against the suit to receive a second chance to assert a defense which he could have asserted at trial.

¶30. Cappaert and Way make special note of the fact that, as mentioned earlier, Ashton Hardy represented to the Federal Communications Commission that Price was the sole owner of KNEK FM. Cappaert and Way argue that this apparent misrepresentation constitutes an "ill-practice" which would lead a Louisiana court to void the judgment. In reality, however, the statements made to the FCC were unrelated to the suit for attorney fees filed by Walker, Bordelon, except to the extent that they may have been admissible as evidence if Cappaert and Way had elected to defend against said suit.

¶31. Ashton Hardy testified at trial that his inaccurate statements made to the FCC were made initially as a result of his uncertainty as to whether the joint venture agreement served to create an ownership interest in Cappaert and Way which must be reported to the FCC. Hardy testified that he did not subsequently inform the FCC as part of his efforts to maintain the confidences of his client Price, given that Price would likely face sanctions from the FCC if he were shown to have made a misrepresentation in an FCC application.

¶32. The circumstances surrounding this apparent falsehood are less than clear, and the actions of Walker, Bordelon in this regard may or may not be of interest to the FCC or the Louisiana bar depending upon their rules regarding candor before a tribunal and related matters. With regard to the present appeal, however, the actions by Walker, Bordelon can not be said to have justified Cappaert and Way in failing to file an answer to the suit in question. Therefore, this Court does not address the legal and ethical implications of the apparently erroneous information provided to the FCC by Walker, Bordelon.

¶33. Both Cappaert and Way acknowledge that they were properly served with process in the Louisiana suit, and they must bear the consequences of failing to assert the defenses which they may have had but failed to assert to Walker, Bordelon's suit on open account. Thus, the Louisiana judgment was properly granted full faith and credit by the circuit judge and points of error B,C, and D are without merit and are overruled.

### E. The lower court erred in dismissing the counterclaim of Cappaert and Way against the appellees, Walker, Bordelon, Hamlin, Theriot and Hardy.

¶34. Cappaert and Way assert that Walker, Bordelon should be held liable for the fact that assets of Cappaert's were seized far in excess of the judgment amount, and that the trial judge was in error in dismissing their counterclaim to that effect. This point of error is without merit. The record reveals, and the trial judge noted in his ruling dismissing the counterclaim, that:

> The writ of garnishment that was filed specifies the amount of the debt. This Court stayed execution and there was no testimony of seizure of any assets other than the accounts pursuant to garnishment. The defendants have failed to prove their counterclaim and it is dismissed.

The record does reveal that Cappaert's bank elected to freeze funds of his well in excess of the amount specified in the Garnishment Order and that he suffered embarrassment and hardships as a result of the freezing of said funds. As noted by Walker, Bordelon, however, any excessive freezing

of account funds by Cappaert's bank is the responsibility of the Bank, and not Walker, Bordelon. The counterclaim was without merit and was properly dismissed.

¶35. Therefore, all of the assignments of error are overruled, and the ruling of the circuit court is affirmed.

**¶36. JUDGMENT IS AFFIRMED.**

**SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. LEE, C.J., NOT PARTICIPATING.**