801 So.2d 642 (2001)
W.P. FULLER
v.
AMERICAN RECREATIONAL VEHICLES, et al.
No. 01-0664.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
*643 Albin Alexandre Provosty, Provosty, Sadler, deLaunay, Alexandria, LA, Counsel for Plaintiff/Appellant W.P. Fuller.
John Craig Jones, Attorney at Law, Oakdale, LA, Counsel for Defendants/Appellees American Recreational Vehicles, Inc., Tri-City Industries, Inc., Niesman Bishoff, N. A., Daniel Ayers, David Ayers, Angeline Ayers.
Sharon Cormack Mize, Sessions, Fishman, etc., New Orleans, LA, Counsel for Third Party Defendant Man Roland, Inc.
Robert E. Winn, Sessions, Fishman, et al., New Orleans, LA, Counsel for Third Party Defendant, Man Roland, Inc.
Deana Dolores Palmisano, Sessions & Fishman, New Orleans, LA, Counsel for Third Party Defendant Man Roland, Inc.
Court composed of ULYSSES GENE THIBODEAUX, BILLIE COLOMBARO WOODARD, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The plaintiff, W.P. Fuller, appeals the trial court's judgment sustaining a declinatory exception of personal jurisdiction filed by the defendants, David and Angeline Ayres. We affirm.

FACTS
On April 3, 1987, Fuller purchased a 1987 Clou Liner recreational vehicle for $269,000 from American Recreational Vehicles, Inc., a division of Tri-City Industries, Inc., a Texas corporation located in Beaumont, Texas. The vehicle at issue, a Clou Liner 3800, was manufactured by Niesmann-Bischoff GmbH, a German Corporation. Daniel, the Ayres' son, consulted with the manufacturer to ensure that the vehicle met United States standards prior to importation. The vehicle was then sold to Tri-City for resale through American Recreational Vehicles. It was eventually sold to Fuller.
On January 13, 1994, Fuller filed suit in Allen Parish against American Recreational Vehicles, Tri-City, Niesmann Bischoff, *644 N.A.,[1] and Daniel, seeking a recission of the 1987 sale of the Clou Liner or, alternatively, a reduction in its sale price and damages due to vices and defects. David and Angeline (the Ayres) were added as defendants by Fuller at a later date. Various procedural maneuvers occurred in this matter, including removal to federal district court and the addition of third party demands involving German corporations. However, the only issue in this appeal concerns the trial court's sustaining of a declinatory exception of lack of personal jurisdiction in favor of the Ayres.
The Ayres, Texas residents, filed a Declinatory Exception of Lack of In Personam Jurisdiction on August 2, 1995. After a hearing on November 17, 1995, the trial court issued its judgment sustaining the exception on March 21, 2001. In its ruling on the exception, the trial court held that the fiduciary shield doctrine protected David and Angeline from personal jurisdiction in Louisiana, since their only contacts with this state were "rooted in their respective corporate capacities." Finding no personal contacts with this state, the trial court sustained the exception. This appeal by Fuller followed.

ISSUE
On appeal, Fuller argues that the trial court erred in sustaining the Ayres' exception of lack of personal jurisdiction and by improperly applying the fiduciary shield doctrine.

PERSONAL JURISDICTION
The law pertaining to personal jurisdiction was set out in Aetna Casualty and Surety Co. v. Continental Western Insurance Co., 97-206, pp. 4-6 (La.App. 3 Cir. 12/10/97), 704 So.2d 900, 902-03, writ denied, 98-0077 (La.3/13/98), 712 So.2d 884, writ denied, 96-1634 (La.9/27/96), 679 So.2d 1343:
Louisiana's long-arm statute, La.R.S. 13:3201, authorizes the exercise of personal jurisdiction by a Louisiana court to the limits allowed by constitutional due process. Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790 (La.1987). Thus, our only inquiry into jurisdiction over the person of a nonresident is whether the requirements of constitutional due process have been met. Id.

Due process requires that a nonresident have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This protects the nonresident's liberty interest in not being bound by the judgments of states with which it has established no meaningful "contacts, ties or relations." Id.; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985).
The contacts with the forum state must be continuous and systematic, giving support to an assertion of general jurisdiction, or the cause of action must arise out of or relate to a contact, giving support to an assertion of specific jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
A nonresident has the necessary contacts with the forum state where it has a contract with a substantial connection to *645 the forum state. McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In the specific area of interstate contracts, where a party has reached out beyond its domiciliary state and has created continuing obligations and relationships with citizens of another state, that party is subject to the regulations and sanctions in the other state for the consequences of its actions. Burger King Corp., 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.
The nonresident must have purposefully availed itself of the privilege of conducting activities within the forum state such that it can be said it should have reasonably anticipated being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958), the court stated, and in Burger King Corp., 471 U.S. 462, 474-475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, the court reemphasized the following:
The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Emphasis added].
The "purposeful availment" requirement ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes v. Marine Mgt. and Consulting, 586 So.2d 103 (La.1991).
There has developed a two-part test in personal jurisdiction analysis. First, it must be shown that the defendant has established minimum contacts with the forum state-i.e., it has purposefully directed its activities at the residents of the forum state. Once that is shown, "a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present `a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" de Reyes, 586 So.2d at 106.
Additionally, it is settled that jurisdiction over a foreign corporation does not necessarily confer jurisdiction over the individual officers and employees of that corporation. Cobb Indus. ., Inc. v. Hight, 469 So.2d 1060 (La.App. 2 Cir.1985).
This doctrine is often times referred to as the "fiduciary shield doctrine" and has its origin in judicial interpretations of long-arm statutes. Columbia Briargate Co. v. First National Bank in Dallas, 713 F.2d 1052 (4th Cir.1983), cert. denied, Pearson v. Columbia Briargate Co., 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). It is rooted in the principle that the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity. Id. When dealing with corporate officers, a court must look to the individual and personal contacts, if any, of the officer or employee, with the forum state. Cobb Industries, Inc., supra at 1064, citing Candy H. v. Redemption Ranch, Inc., 563 F.Supp. 505 (M.D.Ala.1983). If an officer or employee is engaged in activities within the forum states' jurisdiction *646 which would subject them to the state's long arm statute, jurisdiction by that state may be proper. Briley Marine Service Inc. v. Toups, 551 So.2d 755 (La.App. 1st Cir.1989), writ denied, 553 So.2d 476 (La.1989). Furthermore, if the corporation is not viable and the individuals are using it as a shield to conduct their personal activities a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals. Stuart v. Spademan, 772 F.2d 1185 (5th Cir.1985).
Escoto v. U.S. Lending Corp., 95-2692, pp. 8-9 (La.App. 4 Cir. 5/22/96), 675 So.2d 741, 745, writ denied, 96-1634 (La.9/27/96); 679 So.2d 1343 (footnote omitted). Escoto went on to recognize an exception to the fiduciary shield doctrine which "involves the officer/agent's acting outside of his legitimate corporate authority or shield. The officer therefore individually commits a tortious offense which becomes the crucial factor for the exercise of specific jurisdiction over him. See, La.R.S. 13:3201(A)(4)." Office Dimensions-Louisiana, Inc. v. King, 31,139, p. 9 (La.App. 2 Cir. 9/23/98), 718 So.2d 1052, 1057.
Sustaining the Ayres' exception of lack of personal jurisdiction, the trial court found the following facts:
[T]hat the defendants/exceptors are nonresidents of Louisiana. Further, the Clou Liner at issue was transferred from Tri-City Industries, Inc. ("Tri-City") to W.P. Fuller. At times pertinent to the sale of the Clou Liner, David Ayers [sic] was employed by Tri-City as its president. Angeline Ayers [sic] was employed by Tri-City as secretary/treasurer. With respect to the sale at issue, the tasks performed by the defendants/exceptors were performed in each of their respective capacities as employees of Tri-City.
Based on the preceding facts, the trial court held that neither David nor Angeline had any "personal contacts" with Louisiana, and that any contacts they did have with this state were "rooted in their respective corporate capacities." The trial court has already ruled that it has personal jurisdiction over Tri-City, Niesmann Bischoff N.A., and Daniel; the only issue is whether it has personal jurisdiction over David and Angeline, in their personal capacity. After conducting a de novo review of the matter, we find that the trial court correctly sustained the exception.
David, a Beaumont, Texas resident, testified that he is semi-retired from Tri-City, where he was president and CEO until his retirement in 1987. He testified that Tri-City, a family owned corporation, is a recreational vehicle dealership operating under the name of American Recreational Vehicles. He stated Tri-City purchased the Clou Liner from a German manufacturer, Niesmann-Bischoff GmbH, and then sold it to Fuller. He stated that neither he, Angeline, nor Daniel personally owned, imported, or sold the Clou Liner. He denied participating in the design of the vehicle; however, he stated that he and Daniel consulted with the manufacturer prior to importation to ensure that the vehicle complied with transportation standards set by the United States government. David testified that Niesmann Bischoff N.A. is not a legal entity; rather, he stated that it was a name they intended to use if the importation and sale of the Clou Liners proved successful. Finally, he stated that he was not personally involved in the sale of the Clou Liner to Fuller, and that his only contact with Fuller occurred in 1998, when he wrote a service ticket for him at the dealership.
Daniel, the current president of Tri-City, explained how his parents discovered the Clou Liner while vacationing in Europe *647 and then met with the manufacturers and agreed to import a modified version to the United States. He stated that he traveled to Germany and consulted with the manufacturer to ensure that the vehicle met United States standards. He verified David's testimony that Neismann Bischoff N.A. was a name Tri-City planned to use in the importation and sale of Clou Liners from Germany.
Fuller testified that he learned of the Clou Liner through a Lake Charles, Louisiana television advertisement, and that he first saw it there at a recreational vehicle show. He stated that he was later contacted several times by Daniel, which resulted in the Clou Liner being demonstrated at his home in Kinder, Louisiana. During negotiations, Fuller testified that Daniel recounted how his parents discovered the vehicle in Europe, reached an agreement with the manufacturer for distribution in the United States, and established Niesmann Bischoff N.A. for that purpose. He further stated that he relied on a brochure which implied that Niesmann Bischoff N.A. was the Clou Liner importer. Fuller testified that he did not learn that Niesmann Bischoff N.A. did not exist prior to his purchase. He stated that Niesmann Bischoff N.A.'s existence was important to him because he would never purchase anything not backed by a manufacturer.
After reviewing the evidence presented, we agree with the trial court's finding that David and Angeline had no personal contacts with Louisiana. This is not a situation where either of them performed acts outside of their legitimate corporate authority within this state which would submit them to the exercise of specific personal jurisdiction of the trial court pursuant to Louisiana's long arm statute. Office Dimensions-Louisiana, 718 So.2d 1052; see also Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985).
Fuller further argues that the trial court erred in applying the fiduciary shield doctrine to sustain David and Angeline's exception of lack of personal jurisdiction because they were, in effect, the alter ego of Niesmann Bischoff N.A. He bases his argument on La.R.S. 13:3210(A)(8), which allows a court jurisdiction over a nonresident manufacturer of a product, and La. R.S. 9:2800.53(1)(d) of the Louisiana Products Liability law, which defines a "manufacturer" as:
A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.
However, this argument overlooks the evidence that Tri-City purchased and imported the Clou Liner from Germany and then sold it to Fuller. Thus, under the wording of La.R.S. 9:2800.53(1)(d), Tri-City, and not Niesmann Bischoff N.A., would be considered the manufacturer of the Clou Liner if it was found to be in the business of importing or distributing recreational vehicles for resale and was the alter ego of Niesmann-Bischoff GmhH.
*648 Niesmann Bischoff N.A. was never incorporated, nor do we find that it constitutes an unincorporated association, which is akin to a partnership, since there is no evidence of a contract to "combine their efforts, resources, knowledge, or activities for a purpose other than profit or commercial benefit." Ermert v. Hartford Ins. Co., 559 So.2d 467, 473 (La.1990); La.Civ.Code art. 2801. Thus, Niesmann Bischoff N.A. is not a juridical person, separate and apart from the Ayres. However, in order to find personal jurisdiction over the Ayres, individually, we still must find that they had certain minimum contacts with this state "such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Aetna Casualty and Surety Co., 704 So.2d at 902, quoting International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Neither David nor Angeline had any personal contacts with Louisiana. Daniel handled the sale of the Clou Liner to Fuller, and, if any representations were made to him concerning the vehicle, they were made by Daniel, who has already been found to be subject to personal jurisdiction by the trial court. Since we have already held that the trial court correctly sustained the Ayres' exception of lack of personal jurisdiction, we find no merit in this argument.

CONCLUSION
For the foregoing reasons, the judgment of the trial court sustaining the declinatory exception of lack of personal jurisdiction is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, W.P. Fuller.
AFFIRMED.
NOTES
[1] Neismann Bischoff N.A. (North America) was the name used by Tri-City in its brochure describing the Clou Liner 3800.