BRIDGES, J.,
for the court.
¶ 1. Head & Engquist Equipment, LLC (“Head”), filed suit against Penelore Corporation (“Penelore”), in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana. In its suit it sought to recover unpaid rental charges owed by Penelore on the rental of excavation equipment. Penelore never appeared nor responded to the pleadings filed in Louisiana; therefore, Head soon received a default judgement against Penelore. Head then registered its judgment in the County Court of Lowndes County, Mississippi, in an attempt to collect. Penelore filed a motion with the county court to vacate the judgement for lack of personal jurisdiction by the courts in Louisiana. The county court granted this motion and vacated the judgment; a decision which was later affirmed by the Circuit Court of Lowndes County, Mississippi. From that decision Head now appeals.
STATEMENT OF THE ISSUES
I. WHETHER THE COUNTY COURT OF LOWNDES COUNTY, MISSISSIPPI, ERRED IN GRANTING DEFENDANT’S MOTION TO VACATE
FACTS
¶ 2. Head is a Louisiana limited liability corporation with its principal place of business in Baton Rouge, Louisiana. Penelore is a Mississippi corporation with its principal place of business in Lowndes County, Mississippi. Penelore has no other contacts or business relationships within Louisiana except the one at issue.
¶ 3. Penelore’s relationship with Head began when James Moore, a Penelore representative, purchased equipment parts from Head at its Baton Rouge location. The purpose of his visit to that location and the circumstances leading up to his introduction to Jeffrey Stringer, a Head equipment rental agent, are in dispute among the parties. Penelore states that Moore, who has since passed away, was there simply to purchase parts which may or may not have been for company use. Penelore also states that through conversations that day between Moore and Head employees it was discovered that Moore, through Penelore, was conducting a project to excavate a sunken steamboat in a Mississippi riverbed in Wilkinson County, Mississippi. Penelore claims it was merely “fortuitous” that Moore discovered that Head leased excavation equipment which Penelore could use on its project. Head, however, supports its claim by stating Moore went to its Baton Rouge location for the purpose of renting excavation equipment. Regardless of how the relationship began, Moore left Head’s location in Baton Rouge with a credit and rental application.
¶ 4. After some alleged phone negotiations between the parties the application was filled out in Mississippi and faxed to Stringer in Louisiana. Therefore, one half of the contract was executed in Mississippi and one half was executed in Louisiana. Penelore then leased a sixty foot boom excavator on a month to month basis. Less that two months after the rental of the machine, it malfunctioned causing Penelore to suffer losses from the delay. Head exchanged the sixty foot machine for *1028 a fifty-five foot machine. The lessor/ lessee relationship ended one month after the exchange because Penelore had incurred $23,000 in rental charges and had failed to pay anything on the balance.
¶ 5. Stringer was the salesman assigned the Mississippi sales territory so during the rental period Stringer visited the excavation site a couple of times and called Moore on the telephone several times. Also, during the business relationship between the companies a mechanic from Head traveled to the Mississippi site to service the machine. The terms of the contract between the parties included a “choice of law” clause which stated that Louisiana law would govern and control the document. It also included a provision that the machine would be shipped FOB Baton Rouge, meaning Penelore assumed liability for the machine in Baton Rouge.
ANALYSIS
I. WHETHER THE COUNTY COURT OF LOWNDES COUNTY, MISSISSIPPI, ERRED IN GRANTING DEFENDANT’S MOTION TO VACATE
¶ 6. When reviewing questions concerning jurisdiction, this Court employs a de novo review. This Court is in the same position as the trial court, with all facts set out in the pleadings or exhibits. Sorrells v. R & R Custom Coach Works, Inc., 636 So.2d 668, 670 (Miss.1994). Also, when reviewing a judgment rendered by a “competent jurisdiction in a sister state ... a presumption of validity as to ... [its] assumption of jurisdiction” is given. Galbraith and Dickens Aviation Ins. v. Gulf Coast Aircraft, 396 So.2d 19, 21 (Miss.1981) (citing Marsh v. Luther, 373 So.2d 1039 (Miss.1979)).
A. FULL FAITH AND CREDIT
¶ 7. First of all Head charges this Court to grant full faith and credit to the judgment rendered in Louisiana. Under the United States Constitution, “[f]ull faith and credit shall be given in each state to the public acts, record and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.” U.S. Constitution, art. IV, § 1.
¶ 8. Granting full faith and credit is governed by limitations, primarily “that' full faith and credit does not apply if the rendering court did not have jurisdiction over the parties in the subject matter.” Sollitt v. Robertson, 544 So.2d 1378, 1381 (Miss.1989) (citing Fehlhaber v. Fehlhaber, 681 F.2d 1015, 1020 (5th Cir.1982)). Since the main issue in this case concerns whether or not the Louisiana court had personal jurisdiction over Penelore, this threshold requirement for full faith and credit is not met.
¶ 9. If, after consideration of the elements pertaining to personal jurisdiction it is the determination of this Court that Louisiana did have personal jurisdiction, full faith and credit will be granted. However, if after consideration this Court determines personal jurisdiction did not exist full faith and credit will not be granted.
B. LOUISIANA’S LONG ARM STATUTE AND DUE PROCESS
¶ 10. Louisiana’s long arm statute reads in part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
[[Image here]]
*1029 B. In addition to the provisions of Subsection A, a court of this state may-exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
La.R.S. 13:3201 (1991). Head is asserting personal jurisdiction under sections (A)(1) and (B) the “catch all” provision.
¶ 11. A foreign judgment received from a Louisiana court by a Mississippi corporation should be enforced by full faith and credit in Mississippi when the contract was “freely negotiated” with the absence of “fraud, undue influence, or overwhelming bargaining power.” Tel-Com Mgmt, Inc. v. Waveland Resort Inns, Inc., 782 So.2d 149, 151-2 (¶ 7) (Miss.2001). In Cappaert v. Walker, Bordelon, Hamlin, Theriot and Hardy, 680 So.2d 831, 835 (Miss.1996), the Mississippi Supreme Court recognized the constitutional due process standards for personal jurisdiction as set forth by the United States Supreme Court. “A defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.” Cappaert, 680 So.2d at 834 (citing Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). “A defendant’s contacts with the forum state must be such that he should reasonably anticipate being hauled into court there.” Cappaert, 680 So.2d at 835 (citing World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)).
I. MINIMUM CONTACTS
¶ 12. Since the long arm statute allows Louisiana to exert personal jurisdiction over anyone doing business within the state, we compare Penelore’s contact to prior decisions under the doing business prong of the Louisiana long arm statute. Under the Louisiana Civil Code, La.R.S. 13:3471(1)(1991), “ ‘[transacting business,’ as used in Subdivision (a), is a term which is much broader than ‘doing business’ as defined by earlier Louisiana cases.... It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase ‘engaged in a business activity.’ ”
¶ 13. The Louisiana long arm statute allows the exercise of personal jurisdiction up to the limits of constitutional due process. Fuller v. Am. Recreational Vehicles, 801 So.2d 642, 644 (La.App. 3 Cir.2001). In Fuller, the court laid out United States Supreme Court cases which it believed defined the limits of minimum contact regarding contracts by a nonresident.
A nonresident has the necessary contacts with the forum state where it has a contract with a substantial connection to the forum state. (McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). In the specific area of interstate contracts, where a party has reached out beyond its domiciliary state and has created continuing obligations and relationships with citizens of another state, that party is subject to the regulations and sanctions in the other state for the consequences of its actions. Burger King Corp., 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.
Id. Fuller held that agents of a corporation acting solely in their corporate capacity within Louisiana cannot be subject to personal jurisdiction- in their personal capacity. Id. at 646. The Fuller court also identified a requirement that an individual or corporation must “purposely avail” itself of the privileges of conducting business within the state. Id. at 645 (citing World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)). Determination of this *1030 availment is dependent not upon unilateral activity but the “nature and quality” of the defendant’s actions within the forum state. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).
¶ 14. Mr. Moore might have gone to Head’s Baton Rouge location for a purpose other than that of renting excavation equipment and may not have gone as an agent for Penelore at all. However, once he began to discuss with Mr. Stringer the requirements and. specifics of renting equipment to such an extent that he left with the necessary paperwork, he became Penelore’s agent transacting business within Louisiana. The future agreement he was contemplating at that time was the month to month rental of equipment. This was not a one time transaction but rather a continuous and ongoing relationship between the two corporations. Moore should have reasonably been aware that any dispute between the corporations regarding this lease would be brought in Louisiana state court.
¶ 15. The lease agreement itself on its second page contains sixteen provisions governing the lessor/lessee relationship. These provisions are in small but legible font. The last line of these provisions is a single sentence that is set apart from the other paragraphs. It reads, “[t]he lease is to take effect in Louisiana and is to be governed and controlled by the laws of that State.” The contract also required the equipment to be shipped FOB Baton Rouge. Penelore as a corporation is expected to read and be aware of such terms within a document and to understand that assuming liability for something while it is en route to Mississippi from Baton Rouge may put it at risk for lawsuits in Louisiana. Requiring it to uphold the terms of a contract it entered into freely even if those terms were not specifically agreed upon by the parties is not unconscionable for as a corporation Penelore is expected to read the fine print. Any corporation entering into such an agreement should reasonably be aware of the potential of a suit being brought in the Louisiana courts.
¶ 16. In our de novo review of the facts and circumstances surrounding Penelore’s contract with Head we find that Penelore did not sufficiently prove it lacked minimum contact with Louisiana as is required to vacate a sister state’s finding of jurisdiction. We find that Penelore did purposely avail itself of the privileges of doing business within the State of Louisiana and that through its .contract, Penelore did have a substantial and ongoing relationship with the state of Louisiana.
II. OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUB- . STANTIAL JUSTICE
¶ 17. In determining the issue of fair play and substantial justice we examine (1) the defendant’s burden; (2) the forum state’s interest in the dispute; (3) the plaintiffs interest in convenient and effective relief; (4) the judicial system’s interest in efficient resolution of controversies; and (5) the states’ shared interest in furthering fundamental social policies. Asahi Metal Indus. Co., Ltd. v.Super. Ct. of Ca., 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); World Wide Volkswagen Corp., 444 U.S. at 292 100 S.Ct. 559.
¶ 18. In considering these issues we do not find that Louisiana’s exercise of personal jurisdiction offends fair play and substantial justice. Allowing a corporation to choose the law it wishes to govern its contracts with other companies and corporations is not substantially unfair. Requiring a Mississippi corporation to travel to Louisiana to defend itself and the interest of Louisiana in resolving the disputes of its corporations is also not substantially unfair. Penelore did not support its claim *1031 with a sufficient showing of injustice. Its claim is based on the fact that it had only one isolated contact with Louisiana, Moore’s signing the document in Mississippi and his one initial trip to Louisiana. Those contacts are sufficient to make Penelore’s subjection to personal jurisdiction in Louisiana fair.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY IS REVERSED AND RENDERED, GIVING FULL FAITH AND CREDIT TO THE JUDGMENT OF THE LOUISIANA COURT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, AND GRIFFIS, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.